KALAH A. PAISLEY
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. N., Suite 300
Great Falls, MT  59401
Phone:	(406) 761-7715
Fax:	(406) 453-9973
E-mail:	kalah.paisley@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. JUSTIN ZANE GOBERT, Defendant. | CR 19-81-GF-BMM <br><br> UNITED STATES' SENTENCING MEMO AND NOTICE OF POTENTIAL SENTENCING WITNESSES |
|---|---|

The United States of America, by and through Kalah A. Paisley, Assistant U.S. Attorney for the District of Montana, provides the Court with a memorandum in aid of sentencing the defendant.

## INTRODUCTION

The defendant, Justin Zane Gobert, was indicted by the Grand Jury on

November 7, 2019, for conduct that occurred on June 27, 2017. Doc.1. Following a bench trial on September 22, 2020, the defendant was acquitted of Count I, Aggravated Sexual Abuse of a Child; but found guilty of Count II, Abusive Sexual Contact. The Presentence Investigation Report (PSR) has calculated the defendant's total offense level as 22 and his criminal history category as II, which results in an advisory guideline range of 46 to 57 months of imprisonment. PSR ¶ 86. As is outlined in the Addendum to the PSR and more fully explained below, the government objects to this calculation and believes the defendant's offense level should be 36, with a guideline range of 210 to 262. PSR Addendum.

The government requests the Court impose a sentence of 220 months followed by fifteen years of supervised release. No restitution is being sought in this case.

## GOVERNMENT OBJECTION TO THE PSR

The Court, as the sole factfinder in this case, is in a unique position to balance the full scope of the defendant's conduct, and to impose an appropriate sentence based on that conduct. At trial, the victim testified that the sexual contact the defendant subjected her to was skin on skin contact with her genital area when she was eleven years old. Doc. 49 at 12. However, there was conflicting information provided by medical professionals regarding what she told them that morning. In delivering its verdict, the Court found the victim to be a credible

witness, who testified bravely about what happened to her. Doc. 57 at 5. However, noting the lack of corroboration regarding the skin to skin contact, the Court found that there was not proof beyond a reasonable doubt of skin to skin contact to constitute a sexual act under 18 U.S.C. § 2241(c). Doc. 57 at 6.

Now at the sentencing stage, with the testimony of the victim at trial, as well as the addition of reliable hearsay evidence not admitted at trial, the government is asking this Court to find by the lesser standard of clear and convincing evidence, that the sexual contact that occurred on June 27, 2017, was skin on skin, that it constituted a sexual act for purposes of 18 U.S.C. § 2241(c), and to determine the appropriate guideline range based on that finding.

## Government's Application of the Guidelines

As the addendum to the presentence report outlines, the government's proposed guideline is based on the Court finding skin on skin contact by clear and convincing evidence through victim testimony and review of the forensic interview. PSR Addendum. Starting with the crime of conviction, the government begins at USSG §2A3.4 (Abusive Sexual Contact). Cross-reference (1) states that if the offense involved criminal sexual abuse as defined in 18 U.S.C. § 2241, to apply §2A3.1. Because the victim had not yet attained the age of 12, four points are added pursuant to (b)(2). Additionally, because the defendant was watching the

3

kids while the grandmother was out, two points are added because the victim was in the custody, care, or supervisory control of the defendant, pursuant to (b)(3).[1]

## Acquitted Counts as Relevant Conduct

It has long been established that in determining relevant conduct, a sentencing court may consider conduct of which the defendant has been acquitted. *United States v. Watts*, 519 U.S. 148, 157 (1997). In *Watts*, the Supreme Court considered two consolidated Ninth Circuit decisions, which had applied Circuit precedent holding that "a sentencing judge may not, 'under *any* standard of proof,' rely on facts of which the defendant was acquitted." *Watts*, at 150, citing to *United States v. Watts*, 67 F.3d 790, 797 (9th Cir. 1995).

In *Watts*, a jury had convicted the defendant of possessing cocaine with an intent to distribute but acquitted him of using a firearm in relation to the drug offense. *Watts*, 150. At sentencing, the District Court found by a preponderance of the evidence that Watts had possessed the guns in connection with the drug offense and added two points to his base offense to account for that conduct. *Watts*, 150.

In the second consolidated case, *Putra*, a defendant had been convicted of one of two drug transactions; at sentencing, the District Court found by a

---

[1] The government maintains that the two-point enhancement for custody, care, or supervisory control of the defendant, should apply whether the guideline calculation is based on USSG §2A3.4 or §2A.3.1. This would result in a 24 or 36 offense level respectively.

4

preponderance of the evidence that the defendant had been involved in the second drug transaction and calculated the base offense level by aggregating the drug amounts of both sales. *Watts*, 150-151. The Ninth Circuit reasoned that the verdict of acquittal was an "explicit rejection" of Putra's involvement in the second drug transaction, and that the sentencing court could not punish her for conduct of which she had been acquitted. *Watts*, 151, *citing to United States v. Putra*, 78 F.3d 1386, 1389 (9th Cir. 1996), relying on *United States v. Brady*, 928 F.2d 844 (9th Cir. 1991).

The Supreme Court held that the sentencing court may consider conduct underlying the acquitted charge if that conduct was proved by a preponderance of the evidence. *Watts*, 157. In reversing the Ninth Circuit, the Supreme Court rejected *Brady's* assertion that the jury's verdict was necessarily a rejection of any facts. *Watts*, 155. The Court stated that the Ninth Circuit failed to appreciate the significance of the different standards of proof at trial and sentencing, reiterating that "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt to his guilt." *Watts*, 155, quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984).

In finding that it was proper to consider relevant conduct from acquitted counts when proved by preponderance of the evidence, the Court left unresolved whether relevant conduct that would dramatically increase the sentence must be

5

based on clear and convincing evidence. *Watts*, 157. While preponderance of the evidence is generally the standard of proof at sentencing, due process requires a sentencing court to apply the higher standard of clear and convincing evidence when the application of the sentencing enhancement (or in this case the cross-reference), would result in a disproportionate impact relative to the crime of conviction. *United States v. Jordan*, 256 F.3d 922 (9th Cir. 2001).

The application of the cross-reference to USSG §2A3.4 as requested by the government would potentially increase the offense level between 8 and 14 from the current calculation; the government believes due process requires application of the clear and convincing standard. Clear and convincing evidence is a lesser standard than beyond a reasonable doubt but requires sufficient evidence to produce "in the ultimate factfinder an abiding conviction that the truth of [the facts] are highly probable." *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004), citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

**Evidence Supporting the Sexual Act**

The sexual assault in this case occurred in the middle of the night while Doe was staying at her grandmother's house. Doc. 49 at 6. The only other people there were her disabled uncle, her juvenile brother, and the defendant. Doc. 49 at 6, 7, and 9. Doe was laying in the living room when the defendant grabbed her by the wrist, pulled her up, and took her to her grandma's room. Doc. 49 at 10. Doe fell

asleep and when she woke up, her pants were off, and he was touching her in an area described as "the bottom" with his hands. Doc. 49 at 11. She testified he was touching the area where she goes pee, and that he was touching her under the clothes. Doc. 49 at 12. He was grabbing her and moving his hands up and down. Doc. 49 at 13. She testified that it hurt her. Doc. 49 at 14. She fell back asleep and awoke to him laying by her touching himself. Doc. 49 at 14.

The victim disclosed to her grandmother at the first opportunity and was taken to the hospital. Doc. 49 at 16. She testified that she told her grandma because her dad told her if anything happens like that to tell someone. Doc. 49 at 17. At the hospital she was seen by at least three medical providers. Doc. 49 at 30. At trial, the victim acknowledged that she did not necessarily tell all the people at the hospital everything that happened. Doc. 49 at 17.

Testifying more than three years after the event, the medical providers provided conflicting information regarding the victim's disclosure regarding skin on skin contact. One doctor noted in his report that there was no skin on skin contact; one doctor wasn't sure; and the nurse testified that statement did not differ from what the victim had told her. Doc. 57 at 4. After noting the victim's credibility, the Court cited these statements brought in through medical providers, in finding that there was reasonable doubt of skin to skin contact. Doc. 57 at 6.

What exactly she told the medical providers is lost to time, but the witnesses testified primarily to what they recorded in the medical notes. But the statements the victim made to medical providers were not the only statements she made immediately after disclosure. They were merely the admissible statements produced at trial. There was a fourth statement. Immediately following her medical exam, Doe was transported to the Blackfeet Child Advocacy Center where she underwent a forensic interview with USPO Misty Salois, then a criminal investigator with the Blackfeet Tribe. Exhibit 1.

The forensic interview of the victim was not produced at trial because it was inadmissible hearsay. At sentencing, it is admissible. Hearsay evidence is admissible at sentencing, as long as it is accompanied by some minimal indicia of reliability. *United States v. Huckins*, 53 F.3d 276, 279 (9th Cir. 1995), See also, USSG § 6A1.3(a). This interview was audio and visually recorded and is reliable. It supports the fact that the contact was skin to skin.

In the forensic interview, Doe described the defendant using his hand to touch her bottom part, which she described as the part where she went pee. Exhibit 2, at 28 (filed under seal). She described this as under her clothes, under her underwear, and inside of her pants. Exhibit 2, at 28 and 29. She described the touching: "He was like rubbing it, and then he would like grab it. And then it hurt me, and I was trying to tell him to stop, and I couldn't, because I couldn't talk

because I was tired." Exhibit 2, at 30. These statements corroborate what the victim testified to at trial and support a factual finding of contact constituting a sexual act for purposes of 18 U.S.C § 2241(c).

Though only a starting point, the correct calculation of the advisory guideline is the first step along the sentencing path. Whatever other factors enter into the Court's calculus of what constitutes a reasonable sentence in this case, based on the evidence produced at trial, the Court should find by clear and convincing evidence that the sexual contact was skin-on-skin and apply the cross-reference to §2A3.1.

## SENTENCING RECOMMENDATION

There are general factors that district courts must take into account in exercising their sentencing discretion. Specifically, 18 U.S.C. § 3553(a) directs courts, "in determining the particular sentence to be imposed," to consider the following factors:

> (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;"
>
> (2) "the need for the sentence imposed" to serve purposes of the criminal laws;
>
> (3) "the kinds of sentences available;"
>
> (4) "the kinds of sentences and the sentencing range" established by the guidelines;
>
> (5) "any pertinent policy statement" issued by the Commission;

> (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;" and
>
> (7) "the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a)(1)-(7).

Several of the § 3553(a) factors warrant a guideline sentence in this case including the nature and circumstances of the offense, and the need for the sentence imposed to serve the purposes of our criminal laws. Those purposes include the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and to provide needed training, treatment, and care to the defendant.

### A. Nature and Circumstances of the Offense/Defendant's History and Characteristics

The defendant had access to the victim because of his status as a trusted adult in her grandmother's home. He regularly helped the victim's grandmother with the cleaning of the house and caring for the disabled family member. When the grandmother left that night, she left the victim, her brother, and the disabled uncle in the care of the defendant. The defendant exploited that trust to abuse this child.

While the defendant does not have significant criminal history, those convictions he does have demonstrate a tendency to prey upon the weak. He has

two partner/family member assault convictions, both against his current common law spouse. PSR ¶¶ 30-31. His tribal arrest history also shows consistent contact with law enforcement, and additional arrests for domestic abuse, assault, and elder abuse, with at least two convictions for theft.

Gobert's assaultive history demonstrates the need for any sentence to provide just punishment and protect the public.

### B. Need for sentence imposed to serve the purpose of the criminal laws

#### 1. Seriousness of Offense

Child sex offenses are extremely serious. Victims of child sex abuse often turn to drugs and/or alcohol which can often lead to further victimization. But these crimes have lasting impacts not only on the child who are victims, but the family with whom they live and the community in which the offenses occur. The defendant's continued deflection and minimization continues to impact the victim.

A sentence should reflect the seriousness of this offense and its impact on the community.

#### 2. Promote respect for the law

It is clear Gobert has no respect for the law. This offense was nearly four years ago and his continued assaultive behavior against his spouse shows a clear need for any sentence imposed to promote respect for the law.

### 3. Provide just punishment

As explained above, Gobert's criminal conduct was extremely serious. Any sentence must reflect the seriousness of the offense and provide just punishment for the offense.

### 4. Afford adequate deterrence

Any sentence imposed by the Court should also provide adequate deterrence. Sadly, child sexual abuse is not uncommon. This conduct is serious, and a sentence of significant custodial time serves to deter the general public from engaging in this conduct. While the conviction in this case and subsequent custodial time will ensure the victim can grow into adulthood without being faced with her abuser, a custodial sentence will hopefully deter Gobert from ever considering sexually abusing another child.

A sentence must also serve to deter other members of the community from engaging in similar conduct. People on the Blackfeet Indian Reservation must know that their children will be protected, and child predators will be held accountable.

### 5. Protect the public

Any sentence imposed by this Court must also protect the public from further criminal conduct by Gobert. His sexual abuse of Doe shows that he presents a danger to the community. A sentence of imprisonment within the

government's calculated advisory guideline range will protect the public and will allow the victim to move around her community for some time without the fear of running into her abuser.

### 6. Provide training, treatment, and care to defendant

Finally, it is clear from Gobert's continued denials in the PSR that he is not even at the beginning stages of understanding his criminality and getting treatment for his sexual misconduct. Empathy and self-reflection are necessary for Gobert to begin treatment and find success in sex offender treatment. While in prison, Gobert will hopefully be able to begin sex offender treatment and perhaps learn skills that he will be able to use when he eventually returns to the community.

### NOTICE OF SENTENCING WITNESSES

Notice is hereby given that the following people may testify at the sentencing hearing on February 11, 2021: Doe, victim; and C.O.C, grandfather and guardian of the victim. Given their location and the anticipated winter weather, the government may seek leave for them to appear remotely, either through video or telephone.

### CONCLUSION

As is argued above, the guideline range should be calculated at 210 to 262 months given the full extent of Gobert's conduct. While the Court is free to depart downward from the guideline range in sentencing, it first must ensure the guideline

range is properly calculated, consistent with the intent of Congress and the Sentencing Commission, and accurately reflects the seriousness of his criminal conduct.

The government believes that a sentence of 220 months custody followed by a fifteen-year term of supervised release adequately addresses all the § 3553(a) factors and is sufficient, but not greater than necessary.

DATED this 5th day of February 2021.

LEIF M. JOHNSON
Acting United States Attorney


*/s/ Kalah A. Paisley*
KALAH A. PAISLEY
Assistant U.S. Attorney